UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 22-cv-20945

CYNTHIA WHITECOTTON,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, CYNTHIA WHITECOTTON ("Plaintiff"), through undersigned counsel, sues Defendant, ROYAL CARIBBEAN CRUISES, LTD. ("Defendant"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff seeks damages in excess of $75,000.00, exclusive of interest, costs and attorney's fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C.§ 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by Defendant.

5. Plaintiff is *sui juris* and is a resident and citizen of the state of Texas.

6. Defendant is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

7. Defendant is a dual citizen of the State of Florida and the nation of Liberia.

8. Defendant, at all times material hereto, personally or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

    a. Operated, conducted, engaged in or carried on a business venture; and/or

    b. Had an office or agency; and/or

    c. Engaged in substantial activity; and/or

    d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**DEFINITIONS AND FACTUAL ALLEGATIONS**

10. Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the stairs, and all material and effects pertaining thereto, including the nosing, risers, treads, and/or other parts thereof, anti-slip strips, the surfaces thereof, the handrails, places where drying mechanisms should have been, places for and/or relating to drying off before using the stairs (if any), drains that were or should have been in the area to reduce the amount of liquid in the area, any sources of liquid in the subject area and/or the sources of the liquid involved in Plaintiff's incident, slip resistant materials that were or should have been applied, the stairs' and surface's lighting, design, and/or visual condition, and/or any other applied, adhesive, and/or other material, and/or the ship's stabilizing fins/mechanisms.

11. At all times material hereto, Defendant owned, operated, maintained, managed, and/or controlled the cruise ship, the *Adventure of the Seas*.

12. At all times material hereto, Defendant owned, operated, maintained, managed, and/or controlled the subject area and the vicinity involved in Plaintiff's incident.

13. Plaintiff's incident occurred on or about December 29, 2021, while Plaintiff was a fare paying passenger on Defendant's vessel, the *Adventure of the Seas*.

14. On or about December 29, 2021, Plaintiff was descending external stairs between approximately deck 11 and deck 10, and slipped and fell on stairsteps that were contaminated with a foreign liquid substance, were unreasonably slippery, poorly maintained, had slip resistant strips that were unreasonably poorly maintained and worn down and/or otherwise unreasonably dangerous, and/or uneven.

15. Plaintiff was using the handrail when descending the stairs. However, the handrails were unreasonably slippery and/or otherwise inadequate to prevent or mitigate Plaintiff's incident.

16. The lighting was also unreasonably dark such that it was difficult for Plaintiff to decern that the stairs were slippery prior to her fall.

17. As a result, Plaintiff slipped, fell, and suffered severe injuries.

18. The dangerous conditions included, but are not limited to, the following:

    a. The stairsteps Plaintiff slipped on were contaminated with a foreign liquid substance; and/or

    b. The stairsteps Plaintiff slipped on were unreasonably slippery; and/or

    c. The stairsteps Plaintiff slipped on were poorly maintained such that they were unreasonably slippery; and/or

    d. The stairsteps Plaintiff slipped on had slip resistant strips that were unreasonably

poorly maintained and worn down and/or otherwise unreasonably dangerous such that they were not reasonably reducing the slipperiness of the subject steps; and/or

e. The stairsteps Plaintiff slipped on were uneven and not uniform in dimensions, which unreasonably hindered Plaintiff's body's ability to adjust to the slipperiness of the subject stairsteps; and/or

f. The lighting was unreasonably dark such that it was difficult for Plaintiff to decern that the steps Plaintiff slipped on were slippery prior to Plaintiff's fall; and/or

g. Plaintiff was holding the handrail when descending the stairs, but the handrail was unreasonably slippery and/or otherwise inadequate to prevent or mitigate Plaintiff's incident; and/or

h. These dangers were made worse by the dangerous condition of the ship's due to Defendant's failure to reasonably deploy its stabilizer fins at the time of the subject incident, and/or due to Defendant's failure to reasonably navigate through waters that were not unreasonably rough, and/or Defendant's failure to warn of such conditions, and/or for other reasons; and/or

i. Defendant provided no reasonable ability for passengers to dry off after leaving the pool and/or using the subject stairsteps; and/or

j. There was either non-existent drainage for the subject stairsteps or any such drainage was not reasonably draining liquid from the subject area at the time of Plaintiff's incident; and/or

k. The fact that Defendant did not have crew members and/or reasonably trained crewmembers adequately supervising the subject area at the time; and/or

l. There was an unreasonably dangerous amount of condensation in the subject area;

poorly maintained and worn down and/or otherwise unreasonably dangerous such that they were not reasonably reducing the slipperiness of the subject steps; and/or

e. The stairsteps Plaintiff slipped on were uneven and not uniform in dimensions, which unreasonably hindered Plaintiff's body's ability to adjust to the slipperiness of the subject stairsteps; and/or

f. The lighting was unreasonably dark such that it was difficult for Plaintiff to decern that the steps Plaintiff slipped on were slippery prior to Plaintiff's fall; and/or

g. Plaintiff was holding the handrail when descending the stairs, but the handrail was unreasonably slippery and/or otherwise inadequate to prevent or mitigate Plaintiff's incident; and/or

h. These dangers were made worse by the dangerous condition of the ship's due to Defendant's failure to reasonably deploy its stabilizer fins at the time of the subject incident, and/or due to Defendant's failure to reasonably navigate through waters that were not unreasonably rough, and/or Defendant's failure to warn of such conditions, and/or for other reasons; and/or

i. Defendant provided no reasonable ability for passengers to dry off after leaving the pool and/or using the subject stairsteps; and/or

j. There was either non-existent drainage for the subject stairsteps or any such drainage was not reasonably draining liquid from the subject area at the time of Plaintiff's incident; and/or

k. The fact that Defendant did not have crew members and/or reasonably trained crewmembers adequately supervising the subject area at the time; and/or

l. There was an unreasonably dangerous amount of condensation in the subject area;

and/or

m. Other dangerous conditions that will be revealed through discovery.

19. Each of these dangerous conditions alone was sufficient to cause Plaintiff's incident and injuries, and Plaintiff is alleging that Defendant was negligent as to each of these conditions.

20. Defendant either knew or should have known of these risk creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a. There was a sign in the subject area that said "slippery when wet" (or in the alternative, something similar to the same effect), but Plaintiff was not able to see this sign until after her incident happened since it was in the vicinity of Plaintiff's fall but not within Plaintiff's eyesight.

b. Furthermore, this water and/or this material must have been present on the surface at least 15 minutes prior to Plaintiff's incident because Plaintiff was in a part of the ship where she was able to observe the general area of her fall for at least 15 minutes prior to her fall, and she did not see anyone spill or treat the subject area with any material during that period of time.

c. After Plaintiff fell, it became apparent to her that the water on the subject stairs must have been there for a lengthy period of time, because the significant amount of pooled/accumulated water present on them did not appear that it could have suddenly appeared in a short amount of time, and since the previous steps on the subject stairs she stepped down did not have the significant amount of pooled/accumulated liquid like this step, leading to the deduction that liquid may have had been sitting on more steps than just the subject stairsteps for a lengthy period of time (as the liquid did not appear to be draining from the subject stairsteps much, if at all), but the liquid on the

    other steps must have dried and/or drained by the time of Plaintiff's incident (at least 15 minutes, as water does not drain/dry immediately, and can sometimes take many hours to dry, as a quick Google search will show). Discovery may shed more light on this situation as well.

d. Plaintiff saw after she fell that the anti-slip strip at the end of the step she slipped on was torn up and worn down such that it appeared to have been used for a significant period of time without being replaced or adequately maintained.

e. Previous people suffered prior incidents in which they suffered incidents and/or were injured both due to the same and/or substantially similar slippery surfaces on Defendant's ships, including, but not limited to, *Marshall v. Royal Caribbean Cruises, LTD.*, Case 1:16-cv-21140-KMM (passenger slipped and fell on poorly lit, unreasonably slippery, and unreasonably dangerous and uneven external stairs aboard another one of Defendant's ships).

f. Upon information and belief, Defendant participated in the installation and/or design of the subject stairs, railing, and lighting, Defendant accepted the ship, stairs, railing, and lighting with these design defects present after having been given an opportunity to inspect the ship and the materials on it, including the subject stairs and lighting, such that Defendant should have known of the design defects of the subject stairs before providing them for use by the public. These design defects include, but are not limited to, their unreasonably slippery and otherwise deficient handrails, slip resistant strips that did not provide a reasonable amount of slip-resistance, the unreasonably dark lighting for the stairs, the stairs'/step's failure to adequately drain water, and/or other defects that will be revealed in discovery.

    g. Upon information and belief, there are relevant safety standards/recommendations/other guidelines regarding the safety of the subject stairs and its surfaces, lighting, handrails, and drains (if any), including, but not limited to, the proper slip-resistance for them, the proper dimensions for them, the proper lighting for them, and their proper functionality, and Defendant should have known of these standards because whether such standards are legally required for Defendant to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable Defendant should have done.

    h. Defendant knew or should have known that the subject stabilizer fins were not deployed and/or that the waters it was sailing through were unreasonably rough due to the captain, and the ship's navigation and/or other system keeping track of these conditions, and/or for other reasons.

    i. Defendant also knew or should have known of these dangerous conditions through inspecting the subject area and the vicinity involved in Plaintiff's incident, and if it did not know of these dangerous conditions, this was because it failed to adequately inspect the subject area and the vicinity involved in Plaintiff's incident.

    j. Moreover, Defendant knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

21. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, outdated, improperly designed, improperly installed, and/or otherwise unsafe.

22. The subject area and the vicinity lacked adequate safety features to prevent Plaintiff's fall.

23. These hazardous conditions were known, or should have been known, to Defendant in the exercise of reasonable care.

24. These hazardous conditions existed for a period of time before the incident.

25. These conditions were neither open nor obvious to Plaintiff.

26. At all times relevant, Defendant failed to adequately inspect the subject area and the vicinity for dangers, and Defendant failed to adequately warn Plaintiff of the dangers.

27. At all times relevant, Defendant failed to eliminate the hazards.

28. At all times relevant, Defendant failed to maintain the subject area and the vicinity in a reasonably safe condition.

29. At all times relevant, Defendant participated in the design and/or approved the design of the subject area and the vicinity involved in Plaintiff's incident.

30. At all times relevant, Defendant participated in the installation and/or approved the installation of the subject area and the vicinity involved in Plaintiff's incident.

31. The crewmembers of the *Adventure of the Seas* were in regular full-time employment of Defendant and/or the ship, as salaried crewmembers, subject to the ship's discipline and master's orders.

32. Defendant had the right to hire and fire their employees and/or agents.

33. Defendant is directly responsible and liable for their actions and the actions of its employees and/or agents.

34. The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of Defendant, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

35. The crewmembers were represented to Plaintiff and the ship's passengers as employees of Defendant through signs, documents, and/or uniforms. The crewmembers were also paid a salary and/or an hourly wage by Defendant. Defendant knew that the crewmembers represented themselves to be employees of Defendant and allowed them to represent themselves as such. Plaintiff detrimentally relied on these representations as she would not have proceeded on the subject cruise had she believed the crewmembers were not employees of Defendant.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT, CLEAN, MAINTAIN, REPAIR, REMEDY, AND/OR TAKE OTHER REASONABLE MEASURES FOR THE SAFETY OF PLAINTIFF

36. Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35 as if set forth herein.

37. Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

38. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting, cleaning, maintaining, repairing, and/or remedying the subject area and the vicinity, and/or making other efforts to make sure the subject area and the vicinity were safe for the use and enjoyment of its passengers.

39. At all times material, Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant breached the duty of reasonable care owed to Plaintiff and were negligent by failing to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, such that the risk creating and/or dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint were present at the time of Plaintiff's incident.

40. These risk creating and/or dangerous conditions were caused by design defects and/or by Defendant's failure to adequately inspect, clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe.

41. Defendant's failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, was either due to its failure to adequately inspect the subject area and the vicinity prior to Plaintiff's incident to ensure they were in a reasonably safe condition, or due to its failure to adequately clean, maintain, repair, and/or remedy the subject area and the vicinity, and/or to make other efforts to make sure the subject area and the vicinity were safe, despite its knowledge of the dangerous conditions, which posed a risk to its passengers.

42. In addition, Defendant either knew or should have known of these risk-creating and/or dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

43. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

44. Defendant's negligence proximately caused Plaintiff great bodily harm in that, but for Defendant's negligence, Plaintiff's injuries would not have occurred.

45. As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages,

**ARONFELD TRIAL LAWYERS**
Aronfeld.com

and loss of future earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs.

46. The losses are either permanent or continuing in nature.

47. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CYNTHIA WHITECOTTON, demands judgment against Defendant, ROYAL CARIBBEAN, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, and lost earning capacity, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN

48. Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35 as if set forth herein.

49. At all times relevant, Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including Plaintiff.

50. Such duty includes, but is not limited to, the duty that Defendant owes to warn passengers of any dangers that it knew or should have known that were not open and obvious to Plaintiff.

51. Such duty also includes, but is not limited to, the duty to warn passengers of hazards which passengers may reasonably be expected to encounter.

52. At all times material, Defendant, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with Defendant, breached the duty of reasonable care owed to Plaintiff and was negligent by failing to warn Plaintiff of the dangerous conditions discussed in the "Definitions and Factual Allegations" section of the instant complaint.

53. Furthermore, Defendant knew or should have known of these dangerous conditions for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

54. These dangerous conditions were also created by Defendant.

55. Defendant either failed to adequately inspect the subject staff, area, and the vicinity to ensure that there were no dangerous conditions that passengers needed to be warned of, or Defendant failed to warn Plaintiff despite knowing of the dangers.

56. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

57. These dangerous conditions existed for a period of time before the incident.

58. These conditions were neither open nor obvious to Plaintiff.

59. Defendant's breach was the cause in-fact of Plaintiff's great bodily harm in that, but for Defendant's breach, Plaintiff's injuries would not have occurred.

60. Defendant's breach proximately caused Plaintiff great bodily harm in that the incident that occurred was a foreseeable result of Defendant's breach.

61. As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury

resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

62. The losses are either permanent or continuing in nature.

63. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CYNTHIA WHITECOTTON, demands judgment against Defendant, ROYAL CARIBBEAN, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT III
## NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY

64. Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

65. At all times material hereto, Defendant owed a duty to its passengers, and in particular to Plaintiff, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in the "Definitions and Factual Allegations" section of the instant complaint, as well as to design and install reasonable safeguards.

66. At all times material hereto, Defendant participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and put the vessel on which Plaintiff was injured into the channels of trade, and/or Defendant approved of the subject vessel's design, including the design of the subject area and the vicinity.

67. At all times material hereto, Defendant manufactured, designed, installed, and/or approved of the *Adventure of the Seas*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular to Plaintiff, to design, install and/or approve of the subject area and the vicinity without any defects.

68. At all times material hereto, Defendant through its agents and/or employees who were acting in the course and scope of their employment and/or agency with Defendant ROYAL, designed, installed, and/or approved of the subject area and the vicinity involved in Plaintiff's incident, which was also in violation of the applicable industry standards/recommendations/and/or other guidelines.

69. Defendant provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

70. Defendant maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including the *Adventure of the Seas*, during the new build process.

71. Defendant has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

72. Defendant has the right to inspect and reject design elements before taking possession

of the ship.

73. At all times material hereto, Defendant knew or had reason to know the subject area and the vicinity involved in Plaintiff's incident were unreasonably dangerous for the reasons discussed in the "Definitions and Factual Allegations" section of the instant complaint.

74. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear and tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

75. However, Defendant permitted the dangerous conditions to be present in the subject area and the vicinity without correcting these design deficiencies, and did not design and install reasonable safeguards.

76. The design flaws that made the subject area and the vicinity involved in Plaintiff's incident unreasonably dangerous were the direct and proximate cause of Plaintiff's injuries.

77. Defendant is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in Plaintiff's incident, which it knew or should have known of.

78. Defendant failed to correct and/or remedy the defective conditions despite the fact that it knew or should have known their danger.

79. As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

80. The losses are either permanent or continuing in nature.

81. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CYNTHIA WHITECOTTON, demands judgment against Defendant, ROYAL CARIBBEAN, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENCE FOR THE ACTS OF DEFENDANT'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

82. Plaintiff hereby adopts and re-alleges each and every allegation in paragraphs 1 through 35, as if set forth herein.

83. Defendant owed a duty to exercise reasonable care under the circumstances for the safety of its patrons.

84. The people who were working in and/or who were and/or should have been responsible for inspecting, maintaining, designing, and/or approving the subject area, were agents of Defendant for the following reasons:

85. They were the staff and/or employees of Defendant, or were Defendant's agents, apparent agents, and/or servants.

86. These staff, employees, and/or agents were subject to the right of control by Defendant.

87. These staff, employees, and/or agents were acting within the scope of their employment or agency.

88. Defendant acknowledged that these staff, employees, and/or agents would act on Defendant's behalf, and they accepted the undertaking.

89. Defendant is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in the "Definitions and Factual Allegations" section of the instant complaint.

90. This negligence proximately caused Plaintiff great bodily harm in that, but for this negligence, Plaintiff's injuries would not have occurred.

91. As a result of Defendant's negligence, Plaintiff has suffered severe bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, lost wages, and loss of future earning capacity, and loss of the value of Plaintiff's vacation, cruise, and transportation costs.

92. The losses are either permanent or continuing in nature.

93. Plaintiff has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, CYNTHIA WHITECOTTON, demands judgment against Defendant, ROYAL CARIBBEAN, for damages suffered and costs incurred, as well as for damages and costs that Plaintiff will suffer and incur in the future, as a result of Plaintiff's bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, loss of ability to earn money, loss of the value of Plaintiff's vacation, cruise, and transportation costs, loss of important bodily

functions, and loss of capacity for the enjoyment of life; for all court costs, pre- and post-judgment interest, and for any and all other relief which the Court deems just or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, CYNTHIA WHITECOTTON, demands trial by jury on all issues so triable.

**Dated:** March 29, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:     (305) 441.0440
F:     (305) 441.0198
***Attorneys for Plaintiff***